UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KINDRA MARIE GAGNE,

                         Plaintiff,

v.                                                          1:16-CV-1311
                                                            (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

LEGAL AID SOCIETY OF                            MARY MARTHA WITHINGTON,
NORTHEASTERN NY                                 ESQ.
 Counsel for Plaintiff
40 New St.
Saratoga Springs, NY 12866

U.S. SOCIAL SECURITY ADMIN.                     KRISTINA D. COHN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

        This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  This case has proceeded in accordance with General Order 18.

        Currently before the Court, in this Social Security action filed by Kindra Marie

Gagne ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 9, 10.)  For the reasons set forth

below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1981.  (T. 170.)  She completed high school.  (T. 220.) Generally, Plaintiff's alleged disability consists of anxiety, insomnia, depression, attention deficit disorder ("ADD"), hypertension, post-traumatic stress disorder ("PTSD"), sciatica, low back pain, and narcotics addiction.  (T. 219.)  Her alleged disability onset date is October 26, 2009.  (T. 69.)  Her date last insured is June 30, 2010.  (T. 68.)  She previously worked as a certified nurse aide ("CNA"), resident aide, and housekeeper. (T. 221.)

### B.    Procedural History

On June 19, 2013, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act.  (T. 68.)  Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On February 18, 2015 and again on April 13, 2015, Plaintiff appeared before the ALJ, Robert Wright.  (T. 38-45, 46-67.)  On April 20, 2015, ALJ Wright issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 18-37.)  On August 30, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 23-33.)  First, the ALJ found that Plaintiff met the insured status requirements through June 30, 2010 and Plaintiff had not engaged in substantial gainful activity since October 26, 2009.  (T. 23.)  Second, the ALJ found that Plaintiff had the severe impairments of mild peroneal neuropathy, obesity, mild cervical disc bulge, history of lumbar strain, depression, anxiety, PTSD, ADD, and substance abuse in remission.  (*Id.*)  Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 24.)  Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work[1], except Plaintiff could perform simple, routine work that was low-stress, which was defined as requiring occasional decision-making, changes in the work setting, or interaction with coworkers and supervisors, but no contact with the general public.  (T. 26.)  Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 32.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ committed reversible error in failing to

---

[1]    Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. §§ 404.1567(b), 416.967(b).

find Plaintiff's depression, anxiety, PTSD, and ADD met or equaled Listing §§ 12.04 and

12.06.  (Dkt. No. 9 at 15-19 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the ALJ

committed reversible error in finding Plaintiff had the RFC to perform light work

considering Plaintiff's chronic low back pain, progressive idiopathic neuropathy,

headaches and chronic fatigue in combination with her mental health impairments.  (*Id.*

at 19-21.)  Third, and lastly, Plaintiff argues the ALJ's decision was against the

substantial weight of the evidence and incorrect as a matter of law.  (*Id.* at 21-23.)

### B.    Defendant's Arguments

In response, Defendant makes four arguments.  First, Defendant argues the ALJ

correctly found Plaintiff's mental impairments did not meet or equal Listing § 12.04.

(Dkt. No. 10 at 6-9 [Def.'s Mem. of Law].)  Second, Defendant argues the ALJ correctly

found Plaintiff's mental impairments did not meet or equal Listing § 12.06.  (*Id.* at 9-10.)

Third, Defendant argues the ALJ properly evaluated the medical evidence of record in

determining Plaintiff's RFC.  (*Id.* at 10-14.)  Fourth, and lastly, Defendant argues the

ALJ correctly found that Plaintiff's subjective complains were not entirely credible.  (*Id.*

at 14-18.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo

whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v.

Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the

Commissioner's determination will only be reversed if the correct legal standards were

not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*,

817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a de novo review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.   Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine

whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this

sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct.

2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of
> impairments; (3) whether the impairment meets or equals the severity of the
> specified impairments in the Listing of Impairments; (4) based on a 'residual
> functional capacity' assessment, whether the claimant can perform any of
> his or her past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the claimant
> can perform given the claimant's residual functional capacity, age,
> education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

### A.  The ALJ's Step Three Determination

At step three the ALJ must determine whether Plaintiff's impairments, or

combination of impairments, meets or equals the criteria of any impairment listed in

Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(a)(4)(iii)(d), 416.920(a)(4)(iii)(d).

The impairments listed in Appendix 1 are considered severe enough to prevent a

plaintiff from doing any gainful activity.  *Id.* at §§ 404.1525(a), 416.925(a).  If a plaintiff's

impairment, or combination of impairments, matches one listed in Appendix 1, and

satisfies the duration requirement in 20 C.F.R. §§ 404.1509, 416.909, then the ALJ

should generally find the plaintiff disabled without considering the plaintiff's age, education, and work experience. *Id.* at §§ 404.1520(d), 416.920(d).

To match an impairment listed in Appendix 1, a plaintiff's impairment "must meet all of the specified medical criteria" of a listing. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (citing 20 C.F.R. § 404 Subpt. P, App. 1). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* An impairment may also be "medically equivalent" to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a). Although an ALJ may award benefits at step three, a plaintiff who fails to prove her impairment matches or equals one listed in Appendix 1 is not denied benefits, but rather, the ALJ must proceed to step four. *See id.* at §§ 404.1520(e), 416.920(e).

To satisfy the criteria of Listings §§ 12.04 or 12.06 Plaintiff must meet the requirements of paragraph A and either paragraph B or paragraph C of the Listing. Paragraph B of each of these Listings requires that Plaintiff demonstrate that her mental impairment resulted in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Secs. 12.04(B), 12.06(B).

Or, in the alternative, paragraph C of Listing § 12.04 requires a chronic affective disorder of at least 2 years duration, with at least one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process

that resulted in such a marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) a current history of one or more years' inability to function outside a highly supportive living environment.  20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 12.04(C).  Paragraph C of Listing § 12.06 requires an anxiety-related disorder "[r]esulting in complete inability to function independently outside the area of one's home."  *Id.* at Sec. 12.06(C).

At step three, the ALJ examined Listings §§ 12.04 and 12.06 and determined that Plaintiff impairments, singly and in combination, did not meet or medically equal the criteria.  (T. 24-26.)  The ALJ specifically determined that under the paragraph B criteria of the Listings, Plaintiff had moderate restrictions in activities of daily living, moderate restrictions in social functioning, and moderate difficulties regarding concentration, persistence or pace.  (T. 24-25.)  Regarding Listing § 12.04(C), the ALJ determined Plaintiff had experienced no episodes of decompensation or residual disease process. (T. 25.)  The ALJ determined Plaintiff did not require the type of highly supported living arrangements required under the Listings.  (*Id.*)  The ALJ concluded Plaintiff did not have an inability to function independently outside the area of her own home as required by Listing § 12.06(C).  (*Id.*)

Plaintiff argues the ALJ erred in his step three determination because two medical sources concluded she was incapable of employment, and her symptoms resulted in marked restrictions in activities of daily living and social functioning.  (Dkt. No. 9 at 16-17 [Pl.'s Mem. of Law].)  For the reasons stated herein, and further outlined in Defendant's brief, the ALJ's step three determination was proper and supported by

substantial evidence.  It is therefore recommended that the ALJ's step three determination be upheld.

Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position.  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

First, the ALJ properly concluded that Plaintiff had moderate restrictions in activities of daily living.  (T. 24-25.)  In making his determination the ALJ outlined Plaintiff's testimony at the hearing that she helps her children get ready in the morning, but spends her days sleeping and was unable to tend to her personal care or household chores.  (*Id.*)  However, as indicated by the ALJ, Plaintiff informed consultative examiner, Kenneth Stein, M.D., that she was able to complete all of her daily activities, do light chores, care for her children, play with her children and take her children places.  (T. 25, *referring to* T. 307.)  The ALJ acknowledged State agency psychiatric consultant, James Alpert, M.D. opined that based on a review of the record, Plaintiff had no limitations in her activities of daily living.  (*Id.*, *referring to* T. 74.)  However, as

concluded by the ALJ, the medical evidence supported moderate limitations in activities of daily living.

The ALJ's determination that Plaintiff had moderate limitations in social functioning was supported by substantial evidence.  (T. 25.)  The ALJ again summarized Plaintiff's testimony that going out in public triggered panic attacks and she generally stayed at home.  (*Id.*)  However, the ALJ relied on the medical source statement of Plaintiff's treating psychiatrist, Sung Hyon, M.D., that Plaintiff had moderate limitations in interacting with others.  (*Id.*, *referring to* T. 319.)  Dr. Alpert opined Plaintiff had mild limitations in this area.  (T. 74.)  Therefore, substantial evidence in the record supported the ALJ's determination that Plaintiff had moderate limitations in social functioning.

Plaintiff makes the corollary argument that the ALJ improperly dismissed the opinions of Dr. Hyon and Thomas Osika, Ph.D. and Plaintiff's testimony.  Dr. Hyon stated that Plaintiff "should be considered unable to work."  (T. 319.)  Dr. Osika stated "[i]t is likely [Plaintiff] would have difficulty with any type of work-related tasks given her current emotional functioning."  (T. 304.)  First, the ALJ did not "dismiss" the opinions of Drs. Hyon and Osika.  The ALJ noted that Dr. Hyon's statement was inconsistent with the doctor's opinion that Plaintiff's limitations were moderate and afforded the statement "little weight".  (T. 31.)  The ALJ afforded Dr. Osika's opinion "little weight" reasoning that it was not supported by the evidence.  (T. 30.)  Second, neither statement pertained to whether or not Plaintiff's impairment may meet or equal a Listing, but to Plaintiff's ultimate ability to work.  The ALJ was not required to accept the opinions of the doctors

because the opinions were to a finding of whether Plaintiff was disabled, which is reserved to the Commissioner.

The ultimate finding of whether Plaintiff was disabled and cannot work is "reserved to the Commissioner." 20 C.F.R. §§ 404.1527(d), 416.927(d)[2]. "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *Taylor v. Barnhart*, 83 F. App'x 347, 349 (2d Cir. 2003) ("Dr. Desai's opinion that Taylor was 'temporarily totally disabled' is not entitled to any weight, since the ultimate issue of disability is reserved for the Commissioner. Accordingly, we find no error in the ALJ's decision not to accord controlling weight to Dr. Desai's opinion.") (internal citations omitted); *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 80 (N.D.N.Y. 2005) (ALJ did not err in his decision not to accord treating physician's opinion plaintiff was totally disabled controlling weight). Therefore, the ALJ did not err in affording the determinations of Drs. Hyon and Osika little weight, because a doctor's opinion regarding the disability of a plaintiff is not binding on the ALJ.

Plaintiff further argues that the ALJ erred in his credibility assessment. (Dkt. No. 9 at 18 [Pl.'s Mem. of Law].) The ALJ's assessment of Plaintiff's credibility will be discussed in full in Part IV.B.

---

[2] Effective March 27, 2017, 20 C.F.R. §§ 404.1527, 416.927 have been amended, as have other regulations and SSRs cited herein. Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier regulations and SSRs.

Overall, the ALJ's step three determination was supported by substantial evidence in the record and it is recommended that the ALJ's determination at step three be upheld.

### B.  The ALJ's RFC Determination

Plaintiff's RFC is "the most [Plaintiff] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

Plaintiff essentially argues that the ALJ erred in his RFC determination because 1) he failed to give appropriate weight to the opinions of Drs. Hyon and Osika, 2) he failed to properly assess Plaintiff's credibility, and 3) he failed to properly consider the combined effect of Plaintiff's mental and physical impairments.

On January 3, 2014, Dr. Hyon completed a "Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination" form for the New York State Office of Temporary and Disability Assistance.  (T. 318-319.)  Dr. Hyon indicated Plaintiff suffered from major depressive disorder, PTSD, ADHD, and opioid dependence.  (T. 318.)  When asked to provide physical functional limitations, Dr. Hyon wrote "N/A."  (T. 319.)  In mental functioning, Dr. Hyon opined Plaintiff was "moderately limited" in her ability to: understand and remember instructions; carry out instructions; maintain attention/concentration; make simple decisions; interact appropriately with others; maintain socially appropriate behavior without exhibiting behavior extremes; maintain basic standards of personal hygiene and grooming; and function in a work setting at a consistent pace.  (*Id.*)[3]

---

[3]     The form did not provide a definition of "moderately limited," but offered three choices "no evidence of limitations, moderately limited, and very limited."  (T. 319.)

On August 13, 2013, Dr. Osika performed a consultative examination at the request of New York State Office of Temporary and Disability Assistance.  (T. 302-305.)  On examination, Dr. Osika noted Plaintiff was casually dressed, her hygiene was good, she was cooperative, and she provided relevant and productive responses.  (T. 303.)  He observed her speech was coherent and logical, and her insight and judgment were fair to good.  (*Id.*)  Dr. Osika noted Plaintiff was alert and oriented with no signs of delusion or hallucinations, obsessions or compulsions.  (T. 304.)  He noted her mood and affect were dysphoric, and she was tearful throughout the evaluation.  (*Id.*)  Dr. Osika opined Plaintiff had low-average intellect, was able to recall a string of 3 digits after immediate and extended delay, and Plaintiff was able to recall a string of 6 digits.  (*Id.*)  He noted her general knowledge and vocabulary were good and her math skills were intact.  (*Id.*)

Dr. Osika stated that "given her current level of functioning, it is thought that she would benefit from continued counseling and review for medication management.  It is likely she would have difficulty with any type of work-related task given her current emotional functioning."  (T. 304.)  Dr. Osika did not provide any specific functional limitations.

The ALJ afforded Dr. Hyon's opinion "great weight."  (T. 30.)  However, as stated in Part IV.A., the ALJ afforded Dr. Hyon's opinion that Plaintiff was unable to work "little weight."  (T. 31.)  Plaintiff argues that the ALJ erred in "failing to give Dr. Hyon's opinion controlling weight" because the opinion was well supported by the other medical evidence in the record, including the conclusion reached by Dr. Osika.  (Dkt. No. 9 at 20 [Pl.'s Mem. of Law].)

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c), 416.927(c).  " '[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.' "  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.' "  *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).  However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation."  *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), *Report and Recommendation adopted by* 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 Fed.Appx. 67, 70 (2d Cir. 2013)).  After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.' "  *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129).  "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.' "  *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

First, the ALJ afforded the specific functional limitations provided by Dr. Hyon "great weight" and those limitations were incorporated in the ALJ's mental RFC determination. Moderate limitations in mental functioning does not preclude the ability to do basic work activities. *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); *see Whipple v. Astrue*, 479 F. App'x. 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment); *Saxon v. Colvin*, No. 13-CV-165, 2015 WL 3937206, at *6 (W.D.N.Y. June 26, 2015) ("The ALJ considered the functional limitations suggested by the medical evidence, including plaintiff's moderate limitation in the ability to learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others, and deal with stress. These limitations are incorporated into the RFC, which limits plaintiff to simple routine tasks in a low stress, low contact environment.").

Second, as discussed in Part IV.A., the ALJ was not bound by Dr. Hyon's opinion that Plaintiff was unable to work because such determination was reserved to the Commissioner. Therefore, the ALJ properly afforded "great weight" to Dr. Hyon's opinion that Plaintiff had moderate limitations in mental functioning and incorporated those limitations into his RFC determination. The ALJ also properly afforded Dr. Hyon's statement that Plaintiff was unable to work little weight, because determinations as to the ultimate question of disability are reserved to the Commissioner.

Dr. Osika opined that Plaintiff "likely" would have "difficulty" with work-related tasks. (T. 304.) Dr. Osika's opinion was vague at best. Liberally construed, the statement could be read as indication that Plaintiff was unable to work. Such opinion, as outlined herein, was not binding on the ALJ. The statement could also be read as merely indicating Plaintiff would have some degree of difficulty with work activities, but was not precluded from all such activities, which would be consistent with Dr. Hyon's opinion that Plaintiff had "moderate" limitations in mental functioning. Either way, the ALJ properly afforded Dr. Osika's opinion "little weight" and overall the ALJ's mental RFC determination was supported by the medical opinion of Dr. Hyon.

Plaintiff further asserts the ALJ erred in his assessment of Plaintiff's credibility. (Dkt. No. 9 at 19-20, 21-23 [Pl.'s Mem. of Law].) A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine

whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at §§ 404.1529(a), 416.929(a).  Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work.  *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible.  (T. 27.)

In making a credibility determination, the ALJ outlined Plaintiff's testimony regarding the alleged physical and mental limitations due to her impairments and treatment she received including medications.  (T. 26-27.)

17

Plaintiff asserts the ALJ erred in his credibility analysis because he gave "little consideration" to Plaintiff's physical impairments.  (Dkt. No. 9 at 19 [Pl.'s Mem. of Law].)  However, in his determination the ALJ thoroughly summarized the medical evidence pertaining to Plaintiff's physical impairments.  Indeed, two pages of the ALJ's decision were devoted to summarizing Plaintiff's physical impairments and treatment.  (T. 27-28.)  The ALJ outlined emergency room treatment for back and neck pain, Plaintiff's treatment with Vinodrai Parmar, M.D. for neuropathy symptoms, medical diagnostic testing indicating "evidence of mild predominantly sensory peroneal neuropathy in the right lower extremity," and notations provided by Katrina LaBate, RPA-C.  (*Id.*)  Although Plaintiff may disagree with the weight the ALJ afforded Plaintiff regarding her physical symptoms, the ALJ thoroughly outlined Plaintiff's treatment for her physical impairments and there was no indication from the record that the ALJ misconstrued the evidence.

Plaintiff further asserts that in his credibility analysis the ALJ "ignored probative and supportive evidence of disability and reached conclusions unsupported by evidence of record."  (Dkt. No. 9 at 23 [Pl.'s Mem. of Law].)  However, Plaintiff does not provide citation to the record of such evidence the ALJ allegedly ignored.  (*Id.*)  After a review of the record, and the ALJ's decision, this Court concludes that the ALJ did not "ignore" evidence.  The ALJ's decision thoroughly outlined the medical evidence, and other evidence.  In addition, an ALJ's failure to cite specific evidence does not indicate that it was not considered.  *Barringer v. Comm'r of Social Sec.,* 358 F.Supp.2d 67, 78-79 (N.D.N.Y. 2005).

"It is the function of the [Commissioner], not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of the witnesses, including the

claimant." *Aponte v. Secretary, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984). Overall, the ALJ properly assessed Plaintiff's credibility and substantial evidence in the record supported his determination. The ALJ summarized Plaintiff's testimony and the medical evidence. The ALJ outlined treatment received, medications, and medical opinions. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv)-(vi), 416.929(c)(3)(iv)-(vi). The ALJ also discussed and took into consideration Plaintiff's activities of daily living. *Id.* at §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). Therefore, it is recommended that the ALJ's credibility determination be upheld.

Plaintiff argues the ALJ's RFC determination failed to take into account the combined effects of Plaintiff's impairments. (Dkt. No. 9 at 20, 23 [Pl.'s Mem. of Law].) Plaintiff asserts that although none of her impairments considered alone is disabling, the combined effects of her low back pain, polyneuropathy, headaches, and chronic fatigue, render her disabled. (*Id.*) The Regulations state that the ALJ is required to consider the "combined effect of all of [Plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923.

Here, there is no indication that the ALJ failed to take into consideration the combined effects of Plaintiff's impairments. At step two of his determination, the ALJ determined Plaintiff had the severe impairments of neuropathy, obesity, mild cervical disc bulge, lumbar strain, depression, anxiety, PTSD, ADD, and substance abuse in remission. (T. 23.) The ALJ further determined Plaintiff's medically determinable impairments of hypertension and gastrointestinal reflux disease were non-severe. (T. 24.) The ALJ also noted Plaintiff testified at the hearing she had a diagnosis of type II

diabetes; however, treatment notes did not contain a diagnosis, but a "concern for" diabetes.  (*Id.*)  At step three the ALJ examined Listings pertaining to Plaintiff's spinal impairments, neuropathy, obesity, and mental impairments.  (T. 24-26.)  In his RFC analysis, the ALJ discussed Plaintiff's medical treatment for all of her physical and mental impairments and her testimony regarding limitations stemming from those impairments.  (T. 26-32.)  As outlined herein, the ALJ's RFC determination, including his credibility determination, were supported by substantial evidence in the record.  The ALJ properly took into consideration all of Plaintiff's impairments at every step of the sequential process; therefore, it is recommended that the ALJ's RFC determination be upheld.

**ACCORDINGLY**, based on the findings above, it is

> **RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:         October 13, 2017

_Bill Carter_
William B. Mitchell Carter
U.S. Magistrate Judge